UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRAMAINE FLETCHER,<br><br>        Petitioner,<br><br>   v.<br><br>J. LIZARRAGA,<br><br>        Respondent. | No. 2:14-cv-1409 TLN CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California prisoner who filed an amended application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2013 conviction for multiple child-related sexual offenses for pimping out a 14 year old girl. He was sentenced to 19 years and four months.[1] ECF No. 13. Respondent has answered the amended petition, ECF No. 21, and petitioner has filed a traverse. ECF No. 34.

---

[1] Petitioner was originally convicted and sentenced in 2009. However, on direct appeal, the California Court of Appeal remanded petitioner's case for resentencing on Counts 9 and 10 in order for the trial court to exercise its discretion in imposing consecutive or concurrent terms. See ECF No. 21 at 54 (direct appeal opinion) ("Fletcher I"). The trial court reimposed its original consecutive sentence on these counts. See State Lodged Doc. 22 (R.T. of 8-23-13 at 12) (resentencing transcript). Petitioner filed a second appeal challenging these consecutive sentences, State Lodged Doc. 23, and on November 11, 2014, the court of appeal affirmed the sentence. People v. Fletcher, 2014 WL 5870253, *1 (Nov. 11, 2014) ("Fletcher II"). The California Supreme Court denied review. See State Lodged Doc. 26.

1

Upon careful consideration of the record and the applicable law, the undersigned recommends that the petition be denied for the reasons set forth below.

## I. Factual and Procedural Background

In its ruling on petitioner's first appeal of his conviction and sentence, the California Court of Appeal, Third Appellate District, summarized the facts as follows:

> In April 2008, the Sacramento Police Department's vice unit was examining Web sites trying to locate juveniles involved in prostitution. On April 8, Detective Derek Stigerts recognized a girl on Craigslist with whom they had dealt the prior year, when she was 13 years old. The girl's name was Kimberly J., and she was using the same false name, "Sparkle," she had used previously. Other ads associated with the same phone number showed Kimberly J. with another female. One of the ads read, "Come relax and unwind with us, two is better than one, Sparkle and Cinnamon." The wording was typical of a prostitution ad.
>
> Stigerts set up a "date" with the two girls. They made plans to meet at a Jack In the Box, where one of the girls, "Cinnamon," got into the car with the undercover officer, then went across the street with him to a motel. This procedure is typically used by prostitutes to see if the persons they meet are law enforcement and to ensure their own safety. Officer Corey Morgan was pretending to be the John (customer), because Kimberly J. knew Detective Stigerts from their previous encounter.
>
> "Cinnamon," i.e., co-defendant Siama Rivera, informed Officer Morgan there would be two girls. Kimberly J. was inside the motel room. Rivera seemed nervous, and asked Morgan if he were a cop. She began touching his chest, stomach, and waist. Morgan lifted his shirt and turned around in a circle to show her that he was not wearing a wire. Rivera told Morgan to "show her [his] dick." She then grabbed his penis through his pants. Morgan asked if she had any condoms. Rivera said that he could get a massage and a dance. Morgan said, "from both of you?" He motioned to Kimberly J., who nodded "yes." They told him it would cost $250. Rivera then got a call on her cell phone. When she hung up she said, "all we do is massage and dance." She walked him to the door. When Morgan opened the door, other officers in the operation were waiting.
>
> There were approximately 10 to 12 law enforcement officers working the operation. In addition to Officer Morgan, who went inside the motel room, there were surveillance officers spread out in the parking lot. Pimps are often in the parking lot or in other rooms in the motel. As several officers were approaching the room, a white Jaguar that was parked directly below the room quickly backed out of the parking space. Defendant was the driver of the Jaguar.
>
> Officers stopped the Jaguar and found two cell phones inside. One of the phones contained a photo of Kimberly J. engaged in sexual

activity. The officers also found a small amount of marijuana on defendant, a card key for the motel, a receipt for a different motel, and $130 cash.

In the motel room, officers found two packaged condoms, a backpack containing one-inch square baggies and men's boxer shorts, a size XXXL T-shirt, a starter kit for a Boost Mobile cell phone and a corresponding $20 phone card, a pair of men's shorts, two cell phones, a wireless Internet card two laptop computers, an address book and day planner, motel receipts in defendant's name, a photo of defendant holding a fan of money, an Amtrak receipt with the names of defendant and "Siama Olivo," and a large stack of DVDs including "Cross Country Pimping" and "Hustle and Flow." They found no cash in the room.

The officers also found a bag belonging to Kimberly J. The bag contained female clothing and other personal items, and included a pair of pink underwear that was "very similar" to the pink underwear worn by the girl featured on the Internet ads. The bag contained no illegal narcotics, no money, no computers, and no phones.

When Kimberly J. was picked up, she denied being involved in prostitution or knowing defendant. She admitted she knew the other woman in the room, whom she identified as "Cinnamon." She was taken to juvenile hall on an unrelated warrant. Kimberly J. was placed in a group home, from which she ran away and remained a runaway for approximately four months. After she returned and was interviewed, she said she was ready to tell the officers the truth and did not want to return to her old lifestyle.

Kimberly J. told Officer Pamela Rae Seyffert, who interviewed her, that she met defendant when she was on Watt Avenue near Interstate 80. She had a couple of cigars with her and wanted to get some marijuana. She saw defendant parked in his vehicle and approached him because she thought she might be able to get some marijuana from him. She told defendant she did not have a place to stay, and he offered her a room with him and his girlfriend at a Motel 6. She told defendant she was 18 years old.

She said that defendant took the photographs that appeared on the Internet. She said that during the time that she was with defendant and Rivera, she had walked the streets twice as a prostitute, and the rest of the time had posted on the Internet for customers.

Kimberly J. explained that when she and Rivera posted on the Internet, defendant would leave as it was getting close to the time for the John to show up. After the "date" was over, they would contact defendant via the Nextel phone. She said that all the money she and Rivera earned turning tricks went to defendant. She denied that he demanded the money from her, but said she would never think of not giving the money to him. Defendant bought her food, marijuana, and paid for the room.

Kimberly J. testified at defendant's preliminary hearing. She was 14

3

years old at the time. She testified she started working as a prostitute about two months before she met defendant. Another man had taught her how to do it. She then worked as a prostitute for three other people. She was 13 when she started. When defendant first took her home with him, they went to a Motel 6. That was where she met Rivera. She confirmed that during the time she was with defendant she worked as a prostitute and advertised on the computer. She also walked the street. She and Rivera both worked as prostitutes and put their money together in a certain spot in the motel room. She knew the money was going to defendant because the only way she could stay with him was to make money and do her part. She knew that she was going to start prostituting because she needed money and a place to stay, but she was not sure she ever actually talked to defendant about it.

Defendant and Rivera took pictures of her. She and Rivera posted them as ads on the Internet. Either Kimberly J. or Rivera answered the calls they received from the Internet ads. Whenever a "date" came to the motel, defendant would leave. After the "date" she or Rivera would call defendant on the phone she had been given. She had sex with defendant once. She had oral sex with Rivera more than once. Defendant provided her with food and marijuana, and paid for the motel rooms.

Kimberly J. gave testimony regarding a number of photographs that were later introduced. One was a staged picture taken by defendant of oral sex between Kimberly J. and Rivera. It was taken for the purpose of posting it on the Internet. There were other photos taken by defendant of Kimberly J. orally copulating Rivera, which were not staged photos. No one asked Kimberly J. to perform these sex acts; they just happened. Defendant was sometimes present, and sometimes was not present.

When Kimberly J. had spoken to a detective shortly after she was arrested, she had not wanted to admit knowing defendant because she did not want him to get into trouble for being involved in her prostitution. She was afraid he might go to jail for pimping and get into trouble for "messing with an underaged female." One of the rules of the street was that she was supposed to protect her pimp.

Detectives Stigerts and Morris gave expert testimony on the pimping of juvenile prostitutes. They testified that juvenile prostitutes are commonly advertised on Internet sites such as Craigslist. Detective Stigerts testified he had never seen a 14–year–old prostitute that worked without a pimp.

Detective Morris testified it was very common for pimps to have sexual relations with their prostitutes and furnish drugs to them. The authorities recover cell phones and computers in virtually every juvenile prostitution case. Computers are used to post Internet ads, and prostitutes communicate with their Johns via cell phones. It is common for juvenile prostitution to be advertised on the Internet, and Detective Morris testified he had never seen a juvenile prostitute advertised on the Internet using a motel room who did not have a pimp. Juvenile prostitutes are generally unable to put all of

4

> the parts of a prostitution operation together because they do not have identification, cars, or the ability to rent motel rooms.
>
> It is common in juvenile prostitution cases to find photos such as those found on the cell phone in defendant's car. It is very common in juvenile prostitution cases to find photos of naked women in provocative poses. They are typically taken to be posted on the Internet, for the pimp's sexual gratification, to blackmail prostitutes, and to brag to others in the prostitution industry. It is very common in cases of juvenile prostitution to find photos on cell phones of money or someone holding money.
>
> Also on the cell phone found in defendant's car were text messages. One read, "Did u make dat money 4 me?" This represented a communication between a pimp and a prostitute, and is common to find in juvenile prostitution cases. There were also recruitment-type text messages on the phone. These are common because a pimp will browse the Internet looking for prostitutes and send them text messages.
>
> Detective Morris was not surprised that no money was found in the motel room. The pimp usually keeps the money, because allowing the prostitute to keep money would divest him of control. A forensic analysis of one of the laptops recovered from the motel room revealed that someone had used it to visit the Craigslist Web site 373 times. One of the user's names on the computer was "Siama." The photos on the computer were consistent with the images that were on the Internet ads and on the cell phone.

People v. Fletcher, 2013 WL 1077716, \*\*1-4 (Cal. App. 3 March 15, 2013).

Following the state court appeal of his re-sentencing, petitioner initiated the pending federal habeas action on June 12, 2014. ECF No. 1. On August 26, 2014, the court stayed this action pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003), while petitioner exhausted additional ineffective assistance of counsel claims in the state court. ECF No. 12.

On November 20, 2014, petitioner filed a habeas petition in the California Supreme Court thereby exhausting his ineffective assistance of counsel claims. State Lodged Doc. 27. The court summarily denied the petition without citation on February 11, 2015. Id.

**I. Standards Governing Habeas Relief Under the AEDPA**

An application for a writ of habeas corpus by a person in custody pursuant to a state court judgment can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

////

Relief is also available under the AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. See also Cullen v. Pinholster, 563 U.S. 170 (2011). Under § 2254(d)(2), factual findings of a state court are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

### III. Petitioner's Claims for Relief

#### A. Sufficiency Challenge

In his first claim for relief,[2] petitioner asserts that the evidence to convict him of pandering was insufficient because Kimberly J. was already a prostitute and did not need to be "persuaded" to engage in additional acts of prostitution.[3]

---

[2] Petitioner's claims have been re-ordered for the court's convenience.

[3] California Penal Code § 266i makes it unlawful to: "(1) procure another for the purpose of prostitution; (2) cause, induce, persuade, or encourage another person to become a prostitute by threats, violence, or any device or scheme; (3) procure another as an inmate in a house of prostitution or a place where prostitution is encouraged or allowed; (4) cause, induce, persuade, or encourage an inmate of a house of prostitution to remain there as an inmate by promises, threats, violence or any device or scheme; (5) procure another for the purpose of prostitution or to enter any place where prostitution is encouraged or allowed by fraud or artifice or by duress of person or goods, or abuse of a position of confidence or authority; or (6) receive or give any money or thing of value for procuring another person for the purpose of prostitution."

7

The California Court of Appeal rejected this claim by emphasizing that "[i]t is immaterial that the person consents to being a prostitute, or that the person is already a prostitute." ECF No. 21 at 48 (citations omitted). The state court relied on the victim's testimony as well as circumstantial evidence of petitioner's specific intent to find that he assisted or induced Kimberly J. to be "an inmate of a house of prostitution," which in this case was the motel room rented by petitioner. Id. at 49. Specifically, the court found that:

> Kimberly J. testified that she knew all of the money she made was going to defendant, and that she believed this was the only way that she could stay with him—to make money and do her part. Defendant gave Kimberly J. a cell phone to assist her in making "dates" from her Internet postings. Defendant took pictures of Kimberly J. that were used to post ads for prostitution on the Internet. During the time Kimberly J. was with defendant, he provided her with food and marijuana, for which she did not pay. He never asked her to pay for it. All of this evidences a tacit agreement between Kimberly J. and defendant that he would pay for her room, board, and drugs if she would sell herself as a prostitute and give him her earnings.

Id.

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326. Here, a rational jury could easily have found the elements of pandering beyond a reasonable doubt based on the numerous items of physical evidence recovered from petitioner's car and motel room in conjunction with Kimberly J's testimony. The California Court of Appeal's decision is not an unreasonable application of the Jackson sufficiency standard. Accordingly, the undersigned recommends denying petitioner's sufficiency challenge to his

pandering conviction.

B. Confrontation Clause Challenge

Petitioner next asserts that his Sixth Amendment right to confrontation was violated by the trial court's admission of the videotaped preliminary hearing testimony of the victim, Kimberly J., when she could not be located to testify at trial. ECF No. 13 at 24-25. Petitioner argues that this witness was not "constitutionally unavailable" because the prosecution did not make reasonable efforts to obtain her presence at trial. Id. Specifically, petitioner argues that (1) the prosecution should have taken steps to ensure that the victim – a "habitual runaway" – did not go missing before trial, and (2) their efforts to locate her were "too little, too late." Id. After videotaping her testimony, petitioner argues, the prosecutor failed to take "any measures, let alone adequate measures, to ensure [she] did not once again disappear." Id. [4]

1. State Court Opinion

The last reasoned state court opinion addressing this claim is the California Court of Appeal's decision on direct review. The court of appeal denied petitioner's claim as follows:

> The trial court granted the People's motion to admit Kimberly J.'s videotaped preliminary hearing testimony. The People's motion informed the court that Kimberly J. was missing, and detailed the following efforts to locate her: (1) a no-bail warrant for her arrest was issued on January 14, 2009; (2) Detective Morris routinely searched for her on the Internet, which is how she was originally located for this case and for her prior case; (3) a special notice of warrant was issued to all Sacramento Police Department personnel, and to all California law enforcement agencies; (4) Kimberly J.'s mother was served with a subpoena on June 9, 2009, but when she appeared in court she said she had not spoken with Kimberly J. for several months and was unaware of her whereabouts; (5) the People checked with Sacramento County Child Protective Services (CPS), Alameda County CPS, San Francisco County CPS, Fresno County CPS, University of California, Davis, Medical Center, Kaiser South Sacramento Hospital, and Mercy General Hospital; and (7) the People contacted Kimberly J.'s last foster parents, who did not know of her whereabouts.
>
> …
>
> Searching likely Web sites for Kimberly J. was a reasonable way to

---

[4] The court addresses petitioner's Grounds 1 and 2 in the petition concerning the right to confront witnesses and the prosecution's lack of diligence in finding Kimberly J. as a single claim under the Confrontation Clause.

> locate her, since that was how officers had found her in the past. Detective Morris's efforts were also timely, as they began as soon as he was notified that Kimberly J. was missing. His efforts, plus those of the investigators working for the district attorney's office, appear to have been sincerely designed to locate Kimberly J. and not merely perfunctory efforts. No leads were ignored, and every lead was competently explored. (See Herrera, supra, 49 Cal.4th at p. 622.)
>
> The prosecution's efforts to locate and produce Kimberly J. constituted due diligence, thus Kimberly J. was a constitutionally unavailable witness. Defendant's confrontation rights were not violated by the use of her preliminary hearing testimony.

ECF No. 21 at 40-47.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Crawford v. Washington, 541 U.S. 36, 68 (2004), the United States Supreme Court held that, before testimonial hearsay evidence may be admitted, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Here, it is undisputed that petitioner had the prior opportunity to cross-examine Kimberly J. at the preliminary hearing. Thus, the more narrow question before the court is whether the state court unreasonably applied clearly established federal law in finding that Kimberly J. was "unavailable" as a witness so as to render her preliminary hearing testimony admissible.

In California, both the federal and state constitutions analyze the unavailability of a declarant using the same standard. See People v. Herrera, 49 Cal.4th 613, 622 (2010). Under clearly-established Confrontation Clause precedent, a witness is not unavailable unless the prosecution has made a good faith effort to obtain his or her presence at trial. Barber v. Page, 390 U.S. 719, 724-25 (1968) (reversing the denial of habeas relief where the prosecution "made absolutely no effort to obtain the presence of… [the star witness] at trial other than to ascertain that he was in a federal prison outside Oklahoma."). The Supreme Court has made clear that application of the good faith test is fact-dependent, and the lengths to which the prosecution must go "is a question of reasonableness." Ohio v. Roberts, 448 U.S. 56, 74 (citation omitted ), abrogated on other grounds by Crawford, 541 U.S. 36 (2004). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present

that witness." Id. at 74-75.

Here petitioner's argument seeks to extend this clearly established federal law by requiring affirmative steps to not only locate the witness, but physically secure the witness until trial by incarcerating her or committing her to the custody of the probation department as a material witness. See ECF No. 13 at 25-27 (amended federal habeas petition arguing that the prosecution "failed to take reasonable precautions to keep Kimberly J. from disappearing"); ECF No. 21 at 45 (direct appeal decision rejecting same). The California Court of Appeal balked at requiring such a measure in order to establish a good faith effort to obtain the witness, especially since "Kimberly J.'s preliminary hearing testimony was given in November 2008 and testimony did not begin in… [petitioner's] trial until July 15, 2009." ECF No. 21 at 46. The Confrontation Clause cannot be transformed into a prosecutorial mandate to incarcerate every material witness who may move or run away from home between the preliminary hearing and trial.

Petitioner's second argument with respect to his Confrontation Clause challenge is that the prosecution's efforts to locate Kimberly J. "came too little too late." ECF No. 13 at 25. However, the state court record does not support this assertion. The California Court of Appeal emphasized that Detective Morris's efforts to locate Kimberly J. were timely in that they began as soon as he was notified that she had run away from the group home. ECF No. 21 at 47. The prosecution did not wait until the eve of trial, or even immediately before the first scheduled trial date in April 2009, to begin its efforts to locate the witness. The timing of these efforts suggests that the prosecution was making a good faith attempt to secure Kimberly J.'s presence at trial. Moreover, the particular methods used to locate this witness, including internet searches, were reasonable in light of the difficulty of finding a teenage runaway without a driver's license, especially since the prosecution had previously used internet searches to successfully locate her in the past. ECF No. 21 at 43-47. In light of all of this evidence, the undersigned concludes that the prosecution's efforts to locate Kimberly J. were "reasonable" and made in "good faith," and that the state court did not unreasonably apply clearly established federal law in determining that she was unavailable to testify at trial. Nor did the state court base its ruling on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(2). Accordingly, habeas relief is not

11

warranted on this claim and it should be denied.

### C. Ineffective Assistance of Counsel Claims

Petitioner asserts that his trial attorney was ineffective for failing to admit exculpatory and impeachment evidence of his nude body (i.e., tattoos, scars, and a very unique bullet wound to his genital region) in order to refute the prosecution's claims that he had intercourse and oral sex with the victim, Kimberly J. ECF No. 13 at 35. The argument being, if petitioner had sexual relations with the victim, then Kimberly J. would be able to identify said tattoos and scars. Id.

Petitioner attached the trial court transcript from an October 9, 2009 Marsden[5] hearing in which he made this same allegation. Id. at 46-53. However, the Marsden transcript was not attached to petitioner's state habeas corpus petition filed in the California Supreme Court. See State Lodged Doc. 27 (California Supreme Court habeas petition and docket sheet).[6] Respondent alludes to the issue of what evidence was before the state court when it rejected petitioner's claim, but asserts that it is of "no matter" because "it was at least possible for a fairminded jurist to observe that… [petitioner] provided not a scintilla of evidence to show the minor ever saw him nude." ECF No. 21 at 26.

Here, the California Supreme Court summarily denied the petition for writ of habeas corpus without citation. See Lodged Doc. 27. There is no reasoned state court opinion on this claim. However, the California Supreme Court decision constitutes a denial on the merits which is subject to AEDPA review. Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011). In Richter, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S.Ct. at 786.

---

[5] People v. Marsden, 2 Cal. 3d 118 (1970) (reversing a conviction where the trial judge refused to allow the defendant to state his reasons for requesting a new attorney).

[6] Petitioner referred to the Marsden transcript in his state habeas corpus petition, but he did not attach it. See Lodged Doc. 27. Interestingly, petitioner chose to attach excerpts from the trial transcript pertaining to the crime scene investigation that apparently relate to his Brady and DNA claims.

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693–94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. As to ineffective assistance claims in the federal habeas context, the Supreme Court has instructed: "The standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105 (internal citations omitted).

Before the court can resolve that question, however, it has to determine what evidence the California Supreme Court had before it when it denied state habeas relief on this claim. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (federal habeas review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). Petitioner himself was not required to attach the Marsden transcript to his petition since he was proceeding pro se. See Cal. Rules of Court 8.380(b) (stating that pro se parties filing habeas petitions in the California Court of Appeal or California Supreme Court do not need to comply with Rule 8.486 which requires the reporter's transcript to be included). Nor was the California Supreme Court required to order the sealed transcript before ruling on petitioner's habeas petition. Rule 8.385 of the California Rules of Court states that "[b]efore ruling on the [habeas] petition, the court may order the custodian of any relevant record to produce the record or a certified copy…." This is an entirely discretionary act. There is no indication in either the Clerk's Transcript or the Reporter's Transcript that the sealed Marsden hearing was ever made a

part of the record on direct appeal or lodged with the reviewing court.  See Cal. Rules of Court 8.45(c)(2) (requiring the transcript of any in-camera proceeding to be transmitted and kept with the sealed or confidential portions of the record and to be identified in the public index to the clerk's or reporter's transcripts only by its title); Cal. Rules of  Court. 8.45(d)(2) (providing that the confidential portion of the record on appeal is transmitted only to the reviewing court and the party who had access to it in the trial court).  Once a state habeas petition is filed, the reviewing court, in this case the California Supreme Court, has three options:  1) deny the petition; 2) request an informal response from the respondent; or, 3) issue an order to show cause if the petitioner "has made the required prima facie showing that he or she is entitled to relief."  See Cal. Rules of Court 8.385.  In petitioner's case, the California Supreme Court simply denied the petition.

Even the Supreme Court in Pinholster resorted to the California Rules of Court when determining what evidence constituted the state court record on habeas review.  563 U.S. at 188 n. 12 (citing In re Hochberg, 2 Cal.3d 870, 874, n. 2 (1970) (quoting Cal. Rule of Court 60), rejected on another ground by In re Fields, 51 Cal.3d 1063, 1070, n. 3 (1990)).  The Supreme Court recognized that "[i]t appears that the [California Supreme Court] generally assumes the allegations in the petition to be true, but does not accept wholly conclusory allegations, and will also "review the record of the trial ... to assess the merits of the petitioner's claims[.]"  Pinholster, 563 U.S. at 188 n. 12.  However, the state court case cited by the Supreme Court in Pinholster concerned the materials reviewed by the state court following the issuance of an order to show cause and an evidentiary hearing in the trial court on an ineffective assistance of counsel claim.  In re Hochberg, 2 Cal.3d 870, 874, n. 2 (1970) (subsequent history omitted).  However, here, the California Supreme Court neither issued an order to show cause nor required an evidentiary hearing in the trial court on petitioner's claim.  It simply summarily denied petitioner's state habeas petition.

With this understanding of the California Rules of Court and the procedural posture of petitioner's state habeas petition in mind, the undersigned concludes that the Marsden transcript was not a part of the state court record which the California Supreme Court reviewed in

1 adjudicating petitioner's ineffective assistance of counsel claim. As a result, this court is
2 foreclosed from reviewing it in determining whether the state court's rejection of the claim was
3 reasonable. See Pinholster, 563 U.S. 170.

4     In this case, the court assumes, without deciding, that trial counsel's performance was
5 deficient for not introducing the nude photo of petitioner taken by counsel's investigator, but
6 nonetheless recommends denying relief based on lack of prejudice to petitioner. In order to
7 establish a prima facie Strickland violation, petitioner must demonstrate that he was prejudiced by
8 counsel's error. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different
9 result." Pinholster, 563 U.S. at 189 (quoting Richter, 131 S. Ct. at 791)). In this case, there is no
10 substantial likelihood that the verdict would have changed. Trial counsel asked the victim if
11 petitioner had any tattoos, scars, deformations or "anything abnormal about any of his body parts
12 in that area." State Lodged Doc. 1 at 198-200 (cross examination of Kimberly J.) (C.T., volume I
13 of IV). While Kimberly J. equivocated on the presence of tattoos, she testified that she did not
14 see any scars or deformities on his body. Id. Trial counsel relied on this testimony to argue to the
15 jury that the victim was not credible because of her inability to remember petitioner's physical
16 and sexual attributes. See State Lodged Doc. 13, R.T. vol. IV, at 1109-1110. Nonetheless, the
17 jury chose to believe the victim's testimony and convicted petitioner on all counts. Petitioner
18 would now have the jury believe that he would pimp out a 14 year old girl, but he would not have
19 sex with her. Such a conclusion is simply not supported by the expert testimony at trial that
20 pimps engage in sexual activity with their prostitutes. See State Lodged Doc. 13, R.T. vol. IV at
21 906. Because the facts do not support a prima facie case of a constitutional violation, the state
22 court's summary denial of relief was not unreasonable. See Cullen v. Pinholster, 563 U.S. 170,
23 188, n. 12 (2011) (California summary denial represents determination that petitioner failed to
24 state a prima facie case); Nunes v. Mueller, 350 F.3d 1045, 1054–55 (9th Cir. 2003) (where state
25 court issues summary denial, the absence of a prima facie case is the determination that must be
26 reviewed for reasonableness under § 2254(d)).

27     Petitioner's ineffectiveness claim fares no better even if this court were to consider the
28 Marsden transcript a part of the state court record that was reviewed by the California Supreme

Court when it denied state habeas relief. Out of an over-abundance of caution, the undersigned has reviewed the Marsden transcript and finds that it establishes a tactical basis for trial counsel's decision not to introduce the nude photo of petitioner. Without going into graphic detail, trial counsel's statements during the Marsden hearing establish that he did not seek to admit the photograph of petitioner because he did not want to "open the door" for the prosecution to introduce a videotape of petitioner's sexual activity that was seized by police on the date of his arrest. See ECF No. 13 at 52-53. Such "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and do not constitute deficient performance. Strickland, 466 U.S. 690. Trial counsel made an informed and tactical decision not to introduce this evidence. For this reason, the Marsden transcript does not provide any basis for habeas relief as the petitioner suggests.

Petitioner also claims that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. ECF No. 13 at 36. Under the Strickland standard set forth above, and based on the discussion herein of petitioner's ineffective assistance of trial counsel claim, petitioner has not shown that his appellate counsel's failure to assert this claim was prejudicial because there is no merit to the underlying claim. Thus, the undersigned recommends denying petitioner's ineffective assistance of appellate counsel claim.

D.   Sentencing Errors

Petitioner's next three challenges to the trial court's sentencing calculation are simply not cognizable in federal habeas.[7] See Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir.1989) (rejecting as not cognizable in a federal habeas proceeding a claim that the imposition of multiple sentences for single act violated California Penal Code § 654). A claim alleging misapplication of state sentencing law involves a question of state law which is not cognizable in a 28 U.S.C. § 2254 proceeding. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (rejecting a claim that a state court misapplied state statutes concerning aggravating circumstances on the ground that federal

---

[7] These claims include the allegation that: 1) the trial court's failure to stay count 8 violated due process; 2) the trial court improperly imposed consecutive sentences on counts 9 and 10; and, 3) the trial court abused its discretion when it denied petitioner's motion to strike his strike prior. See ECF No. 13 at 10, 21, 33, 40.

habeas corpus relief does not lie for errors of state law); Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir.2002) (concluding that claims alleging only that the trial court abused its discretion in selecting consecutive sentences is not cognizable); Miller v. Vasquez, 868 F.2d 1116, 1118–19 (9th Cir.1989) (concluding that a claim concerning whether a prior conviction qualified as a sentence enhancement under state law was not cognizable). Petitioner has not shown that the challenged aspects of his sentence violate federal law. Thus, the undersigned recommends denying these claims as non-cognizable.

### E. Brady Claim

Petitioner claims that the police detective investigating his case failed to properly collect, preserve, and test evidence including laptops, bed sheets, and a mattress for fingerprints and bodily fluids containing DNA. (Ptn. at 37-38.) Therefore, "[p]etitioner has presented a violation of Brady, [and] no further analysis is required." ECF No. 13 at 38.

In order to establish a Brady violation, petitioner must establish that the undisclosed evidence was: (1) favorable to the accused, either as exculpatory or impeachment evidence, (2) suppressed by the prosecution, either willfully or inadvertently, and (3) material, so that prejudice to the defense resulted from its suppression. Strickler v. Greene, 527 U.S. 263, 281–82 (1999); Brady v. Maryland, 373 U.S. 83 (1963). Here petitioner fails to explain how the laptops, bed sheets, and mattress were exculpatory, much less demonstrate that the prosecution withheld such evidence from the defense especially since it was never tested for fingerprints or DNA. Thus, there was nothing to provide. As a result, the undersigned recommends denying this claim for relief because it is entirely conclusory. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (emphasizing that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief").

### F. Post-Trial DNA Claim

In his last claim for relief petitioner argues that he is being denied due process because the 2009-2010 California Budget Act for post-conviction DNA testing was suspended and no alternative funding source was provided. ECF No. 13 at 39. As a result, petitioner's motion for DNA testing pursuant to California Penal Code § 1405 was granted by the trial court subject to

the limitation that counsel would be appointed to represent petitioner once funding was restored. See Lodged Doc. No. 21 at 29-31 (C.T., vol. I) (trial court minute order dated October 14, 2010). To date, petitioner has not been appointed counsel to investigate and, if appropriate, file a motion for DNA testing.

Once again, this claim is not cognizable on federal habeas review. Simply put, petitioner is not challenging the state court judgment that is responsible for his incarceration in this claim for relief. See 28 U.S.C. § 2254(a) (stating that an application for a writ of habeas corpus may be filed by "a person in custody pursuant to the judgment of a State court…."). He is challenging a 2010 trial court order granting, but delaying, the appointment of counsel to investigate a potential DNA claim. Petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). Furthermore, errors that occur during state post-conviction proceedings fail to state a violation of the federal constitution. See Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (finding that a claim challenging the delay in ruling on a state habeas corpus petition was not "addressable through habeas corpus proceedings"), cert. denied, 493 U.S. 1012 (1989). "[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." Wilson v. Corcoran, 562 U.S. 1, 5 (2010). For all these reasons, the undersigned recommends denying this claim for relief.[8]

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's first amended habeas corpus petition (ECF No. 13) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[8] This recommendation is made without prejudice to petitioner's ability to raise this claim in a civil rights lawsuit pursuant to 42 U.S.C. § 1983. See Skinner v. Switzer, 562 U.S. 521 (2011) (finding that an inmate may raise a procedural due process challenge to a state's DNA testing statute in a § 1983 action); see also Morrison v. Peterson, 809 F.3d 1059 (9th Cir. 2015) (affirming dismissal of a § 1983 action alleging that California's statute authorizing post-conviction DNA testing violated due process).

18

"Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he may also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 30, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/flet1409.hc